**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CASE NO. 1:12-CV-47**

**BOILER SPECIALIST, LLC**                                                                                           **PLAINTIFF**

**v.**

**CORROSION MONITORING**
**SERVICES, INC.**                                                                                                       **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 1404(a) the Defendant moves the Court to transfer this action to the North District of Illinois. Def.'s Mot. Transfer, Docket Number ("DN") 13. The Plaintiff has responded. Pl.'s Resp., DN 15. The Defendant has replied. Def.'s Reply, DN 19. Fully briefed, this matter is now ripe for adjudication. For the following reasons the Defendant's motion is DENIED.

**I.**

The issue before the Court is whether, for the convenience of the parties and witnesses, and in the interest of justice, this case should be transferred to the U.S. District Court for the Northern District of Illinois. After carefully weighing a number of relevant factors, the Court finds that transferring this case would not improve convenience or be in the interest of justice.

**II.**

The underlying facts are relatively straightforward at this nascent stage. Defendant Corrosion Monitoring Services, Inc. ("CMS") and David Craig ("Craig") entered into a written "independent contractor agreement" whereby Craig agreed to solicit, negotiate, and secure contracts with the Tennessee Valley Authority ("TVA") on behalf of CMS in exchange for compensation in the form of commissions. The solicited contracts related to CMS's care and

maintenance of equipment at TVA facilities in Paradise, Kentucky and Colbert, Alabama. Craig later formed Boiler Specialist, LLC ("Boiler Specialist"), the plaintiff in this case, and assigned all of his rights in the contract to that company. Craig is the sole owner of Boiler Specialist.

On January 19, 2012, CMS terminated the independent contractor agreement with Boiler Specialist. *See* Notice of Termination, DN 1-1, p. 20. Boiler Specialist now alleges that CMS's termination constitutes a breach of contract, and the company seeks damages for that breach. CMS has counterclaimed against Boiler Specialist, bringing its own breach of contract claim and asserting that Boiler Specialist and Craig were unjustly enriched by the overpayment of certain commissions.

Boiler Specialist filed suit against CMS in the Circuit Court of Warren County, Kentucky on March 13, 2012. Compl., DN 1-1, p. 11. On April 4, 2012, CMS removed to this Court on the basis of diversity jurisdiction found in 28 U.S.C. § 1332. Notice of Removal, DN 1. CMS now seeks to transfer this case to the Northern District of Illinois.

### III.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." 28 U.S.C. § 1404(a). The text of § 1404(a) requires a district court to conduct a two-step determination when ruling on a motion to transfer. First, the court must determine if the action could have originally been filed in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("[The] transfer power is . . . expressly limited by the final clause of § 1404(a) restricting transfer to those federal districts in which the action 'might have been brought.'"). If the case could have been pursued in the transferee district, then the transferor court must decide whether the case should be transferred in order to "to prevent the waste 'of time, energy and

money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Id.* (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, 27 (1960)). In compliance with the text of the statute, the Court must decide whether transfer will: (1) enhance the convenience of the parities, (2) enhance the convenience of the witnesses, and (3) be in the interest of justice.

In addition to the statutorily prescribed considerations, courts examine a variety of other factors, but "there is no definitive list that must be considered . . . ." 17 James Wm. Moore, *Moore's Federal Practice* § 111.13[1][b]. These "other factors" are generally divided into "public interest" and "private interest" categories. Public interest factors include, but are not limited to: (1) the administrative difficulties created by congested court dockets, (2) the interest in having the case proceed in the location where the events giving rise to it occurred, (3) the court's familiarity with the law governing the causes of action in diversity cases, and (4) the ability to enforce the judgment of the court. *See Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984) (citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). Private interest factors include: (1) the relative ease or difficulty in accessing evidence, (2) the ability to compel unwilling witnesses to testify, and (3) the cost of obtaining willing witnesses. *Id.*; *see Reese v. CNH Am., LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

The permissive language of § 1404(a) gives district courts broad discretion when deciding whether to transfer a case. *Reese*, 574 F.3d at 320. Courts of this district hold that the moving party bears the burden of proving that transfer is proper. *See Lorenzana v. 2nd Story Software, Inc.*, No. 4:12-CV-00021-JHM, 2012 U.S. Dist. LEXIS 95119, at *6 (W.D. Ky. July 10, 2012) (citations omitted); *Powerscreen USA, LLC v. D & L Equip., Inc.*, No. 3:07-CV-433-S, 2008 U.S. Dist. LEXIS 57248, at *3 (W.D. Ky. July 28, 2008) (citing *Commodity Futures*

*Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)). Above all, it must be "kept in mind that, 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese*, 574 F.3d at 320 (quoting *Dowling*, 737 F.2d at 612).

### IV.

CMS seeks to transfer this case to the Northern District of Illinois. The Court will first consider whether Boiler Specialist could have commenced this action in that district. If so, the Court will then determine whether, under the factors described above, transfer would enhance the convenience of the parties and be in the interest of justice.

### A.

Under the terms of 28 U.S.C. § 1404(a) a district court may transfer a case to any other district "where [the case] might have been brought . . . ." Complete diversity of the parties exists in the present case. Boiler Specialist is a Kentucky limited liability company and CMS is an Illinois corporation with its principle place of business in St. Charles, Illinois. Accordingly, Boiler Specialist could have commenced this action in the Northern District of Illinois. *See* 28 U.S.C. § 1391(b)(1) (providing that a civil action may be brought in any district "in which [the] defendant resides"). Section 1404(a)'s requirement that a case may only be transferred to a district where the case could have been brought does not bar CMS's motion to transfer.

### B.

Because Boiler Specialist could have commenced this action in the Northern District of Illinois the Court must now decide whether this case should be transferred to that district. The Court considers a variety of factors in making this determination.

First, the case may be transferred if doing so would prove convenient for the parties. Convenience is generally a matter of the parties' physical location in relation to the plaintiff's

choice of forum. Boiler Specialist and its principle owner are residents and citizens of Kentucky. CMS is incorporated in and has its principle place of business in Illinois. If for no other reason than the cost of transportation, the Western District of Kentucky is the most convenient venue for Boiler Specialist while the Northern District of Illinois is more convenient for CMS and its employees. In fact, one of CMS chief reasons for seeking transfer is to avoid the added expense of litigating in Kentucky.

A choice of either district will work some disadvantage and additional costs on the party not from that district. "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff . . . ." *In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003). There is a "tie" between the parties in this case. CMS is disadvantaged by the Western District of Kentucky in much the same way that Boiler Specialist would be disadvantaged by the Northern District of Illinois. In such a situation, the plaintiff's choice of forum controls. Although the convenience of the parties weighs against transfer, this factor is not outcome determinative without more.

Second, a case may be transferred if doing so would be more convenient for the potential witnesses. The convenience of the witnesses has been recognized as "perhaps the most important factor in the transfer analysis." *Ghaith v. Rauschengerger*, No. 09-14336, 2010 U.S. Dist. LEXIS 6993, at *8 (E.D. Mich. Jan. 28, 2010) (citations omitted). Although convenience to party witnesses is important, "[i]t is the convenience of non-party witnesses . . . that is the more important factor and is accorded greater weight." *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (citations omitted). Indeed, "the location of the majority of non-party witnesses in one of the two districts generally will tip

5

the balance in favor of that district, regardless of where the party witnesses or their employees reside." Moore, *supra*, § 111.13[1][f][iii] (citations omitted).

CMS included a list of defendant's witnesses with its motion to transfer. Def.'s Witness List, DN 13-2, pp. 2-4. All of these individuals live in Illinois, and most are officers of CMS. As officers, they are authorized to speak for the company and are properly considered to be party witnesses. Accordingly, CMS has not shown that transfer to the North District of Illinois would be more convenient for non-party witnesses. Moreover, even though Boiler Specialist has not identified any non-party witnesses by name, it alleges that procurement officials and engineers at the TVA's facilities in Paradise, Kentucky will provide critical testimony regarding performance of the contract at issue in this case. Furthermore, to the extent that it may be necessary for officers from TVA's Chattanooga, Tennessee headquarters to testify, it will be more convenient for those non-party witnesses to travel to Kentucky than Illinois. Although the Court is cognizant of the expense that CMS may incur in bringing party witnesses to testify at a trial in Kentucky, their inconvenience is not given great weight in the transfer analysis. On the other hand, non-party witnesses from the TVA in Kentucky and Tennessee would be greatly inconvenienced by travel to northern Illinois instead of Kentucky. In total, the convenience of the parties weighs against transfer.

Closely related to the convenience of the witnesses, the Court must also consider the ability to compel unwilling witnesses. The parties have tentatively identified witnesses from Illinois, Kentucky, and Tennessee who may be called to give testimony in this case. A federal district court has the ability to subpoena non-party witnesses, but that power is limited in geographic range to the state in which the district is located and within a 100-mile radius of the court. *See* Fed. R. Civ. Pro. 45(3)(A)(ii). In the present case, the ability to subpoena witnesses

weighs against transfer. CMS's officers, as party witnesses, can be compelled to the Western District of Kentucky. The non-party, TVA employees from Kentucky and Tennessee cannot be compelled to the Northern District of Illinois because they are neither in Illinois nor within 100 miles of that court. Although this Court may not compel non-party, Tennessee witnesses, it can cause non-party witnesses residing to Kentucky to appear. Therefore, this Court can reach some non-party witnesses that would be beyond the grasp of the Northern District of Illinois. To the extent that former CMS employees in northern Illinois and TVA officials in Tennessee are beyond the reach of this Court and have relevant testimony, their depositions may be used in any hearing or trial. *See* Fed. R. Civ. P. 32(a)(4). The ability of the courts to compel unwilling witnesses weighs against transfer.

Next, the Court considers the location of the operative events giving rise to this lawsuit. The contract between Boilers Specialist and CMS states that "for the purposes of enforcement and litigation, it is deemed that the signed contract was accepted by [CMS] and significantly negotiated at the offices of [CMS] located in St. Charles, Kane County, Illinois." Independent Contractor Agreement, DN 1-1, p. 16. It must be noted that this clause merely identifies the place where the contract was negotiated and is not a forum selection clause.

Although the terms of the contract were negotiated in Illinois, it appears that a substantial portion of the work that Boiler Specialist was required to perform under the agreement occurred in Kentucky. As stated in the "duties" section of the agreement, Boiler Specialist had the duty to:

> [P]romote [CMS] in all respects and utilize [its] best efforts to ensure that [CMS] will provide all work necessary (and which can be performed by [CMS]) for the maintenance and repair of the TVA Paradise Station Until #1 and #2 tubular air heaters and the TVA Colbert Unit #5 tubular air heaters.

*Id.* at 13. The TVA Paradise Station is located in Paradise, Kentucky, and Boiler Specialist

7

worked with officials at that facility to secure contracts for CMS. Many of the contract negotiations occurred at a *situs* in Kentucky. Even though it is significant that the agreement was negotiated in Illinois, it is equally significant that performance of the agreement occurred in Kentucky. On these facts, the Court finds that the location of the operative events is equally balanced and, while not working against CMS, gives little weight to its motion to transfer.

In addition to the above, CMS puts great significance on the parties' agreement that the contract would be governed by Illinois law. The agreement expressly states that it "shall be construed in accordance with the laws of the State of Illinois." *Id.* at 16. CMS argues that the Northern District of Illinois is the most proper venue because that court has experience interpreting contracts governed by Illinois law. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of law and in law foreign to itself."). Specifically, CMS points to the "procuring cause" rule, a common-law doctrine applicable in Illinois which aids in determining the amount of income a commissioned employee or contractor may be entitled to receive because of his or her help in facilitating sales. According to CMS, Kentucky has no corollary to this rule outside of the context of real estate agents. As such, the Northern District of Illinois would have more experience in resolving the legal issues potentially arising in this case. Given the parties' agreement that Illinois law governs the contract, this factor weighs in favor of transfer. But the Court does not find that this factor outweighs other considerations. The interpretation of substantive contract law from other states does not present a complex legal issue for which this Court is ill-prepared and will not, alone, justify transfer. *See Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (where the application of Florida law to the "relative

simplicity of the legal issues involved in the common law fraud and breach of contract claims" did not prevent the case from being tried in Oklahoma).

Finally, CMS asserts that the Northern District of Illinois is the most proper venue because the vast majority of physical evidence in the form of documents and other records is stored and maintained in that district. While the location of physical evidence such as documents does weigh in favor of transfer, *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) ("Federal courts have long recognized that two of the factors supporting a change of venue are convenience of the witnesses and the location of records and documents."), this consideration does not deserve controlling weight because of "the comparatively low cost of transporting documents." *Pennwalt Corp. v. Purex Indus., Inc.* 659 F. Supp. 287, 290 (D. Del. 1986). This is especially true given the relative ease with which documents can be moved and shared through electronic and digital means. Of course, if the documents are prohibitively voluminous, *see McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337, 348 (D. R. I. 1994), or in the hands of a non-party witness beyond the court's subpoena power, *see Falconwood Fin. Corp. v. Griffin*, 838 F. Supp. 836, 841 (S.D.N.Y. 1993), transfer may be warranted. CMS has not alleged either of these circumstances in the present case, however.

The parties also argued that other factors, such as congested court dockets, weigh in favor of or against transfer. The Court need not address each and every consideration presented by the parties, however. On the whole, these "catch-all" factors are not significant given the analysis of the most pertinent issues outlined above. In all, the Court will not disturb Boiler Specialist's choice of forum where most factors weigh against transfer, especially given the fact that transferring this case to the Northern District of Illinois would place significant, non-party witnesses beyond that court's reach.

## CONCLUSION

Defendant Corrosion Monitoring Services, Inc., moves to transfer this case to the Northern District of Illinois. For all of the foregoing reasons the Defendant's motion is DENIED. Future proceedings in this matter will remain before this Court in the Western District of Kentucky.